IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MIGUEL GUTIERREZ, also known as MIGUEL GUTIERREZ-GUZMAN,<br><br>              Plaintiff,<br><br>vs.<br><br>PHILLIP VALDEZ; IDAHO CORRECTIONAL CENTER; IDAHO DEPARTMENT OF CORRECTION; and CORRECTION CORPORATION OF AMERICA;<br><br>              Defendants. | Case No. CV09-464-S-REB<br><br>**INITIAL REVIEW ORDER** |

The Clerk of Court conditionally filed Plaintiff's Complaint as a result of his status as an inmate and his in forma pauperis request. The Court now reviews the Complaint to determine whether it or any of the claims contained therein should be summarily dismissed under 28 U.S.C. §§ 1915 and 1915A. Having reviewed the record, and otherwise being fully informed, the Court enters the following Order.

## REVIEW OF COMPLAINT

**A.    Factual Allegations**

Plaintiff is a prisoner in the custody of the Idaho Department of Correction (IDOC), currently incarcerated at Idaho Correctional Center (ICC), a private prison operated by Correctional Corporation of America (CCA) under contract with IDOC.

**INITIAL REVIEW ORDER - 1**

Plaintiff lost the use of his right eye during his employment as a porter at the prison. Medical staff have denied Plaintiff an operation that would repair his eye.

Plaintiff is illiterate and was enrolled in an education class, but because his vision problems make concentration stressful for him, he was forced to quit class. Plaintiff states that the prison does not have any special education programs for visually-impaired inmates. According to Plaintiff, the Parole Commission requires literacy classes. Thus, his aspects for parole are now limited. Plaintiff seeks damages and injunctive relief.

**B.      Standard of Law for Review of Complaint**

The Court is required to review complaints seeking relief against a governmental entity or an officer or employee of a governmental entity to determine whether summary dismissal is appropriate. 28 U.S.C. §§ 1915 and 1915A. The Court must dismiss a complaint or any portion thereof which states a claim that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. *Id.*

**C.      Americans with Disabilities Act and Rehabilitation Act Claims**

Plaintiff alleges that the prison's failure to accommodate his eyesight problems in prison education classes violates the Americans with Disabilities Act (ADA).[1] Title II of the ADA applies to a "qualified individual with a disability who with or without reasonable modifications to rules, policies, or practices, . . . meets the essential eligibility

---

[1] Americans with Disabilities Act of 1990, § 1, *et seq*, as amended, 42 U.S.C. §12101, *et seq*. (Title I), § 12132, *et seq*. (Title II), §12181, *et seq*. (Title III).

requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). The Supreme Court has held that the plain language of Title II of the ADA extends to prison inmates who are deprived of the benefits of participation in prison programs, services, or activities because of a physical disability. *See Pennsylvania Dept. of Corrections v. Yeskey*, 524 U.S. 206, 211 (1998). The term "public entity" includes "any department, agency, special purpose district, or other instrumentality of a State or States or local government." *Id.*[2] Title II of the ADA has been upheld as a valid abrogation of state sovereignty "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment." *United States v. Georgia*, 546 U.S. 151, 159 (2006) (emphasis in original). Under Title II of the ADA, plaintiffs may not sue individual defendants in their personal capacities, but must instead sue the state, state entities, or defendants in their official capacities. *See Vinson v. Thomas*, 288 F.3d 1145 (9th Cir. 2002).

In order to proceed with an ADA claim, Plaintiff must allege facts showing that (1) he has a disability; (2) he is otherwise qualified to participate in or receive a public entity's services, programs or activities; (3) he was denied the benefits of the services,

---

[2] In *Jensen v. Lane County*, 222 F.3d 570 (9th Cir. 2000), the Ninth Circuit held that a private physician and non-profit health care corporation's provision of health care to the county detention facility could be construed as the actions of the state. *See also McNally v. Prison Health Services*, 46 F. Supp. 2d 49, 58 (D. Me. 1999) (holding that Title II ADA claim could go forward to trial against a private, for-profit prison medical provider).

**INITIAL REVIEW ORDER - 3**

programs or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability. *Weinreich v. Los Angeles County Metropolitan Transportation Authority,* 114 F.3d 976, 978 (9th Cir. 1997). A "disability" must fit one of three definitions under 42 U.S.C. § 12102(2) to be actionable under the ADA: there must be "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; [or] (B) a record of such an impairment; or (C) being regarded as having such an impairment."

The governmental entity is required to "make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability." 28 C.F.R. § 35.130(b)(7). "The ADA does not require perfect parity among programs offered by various facilities that are operated by the same umbrella institution. But an inmate cannot be categorically excluded from a beneficial prison program based on his or her disability alone." *Pierce v. County of Orange*, 526 F.3d 1190, 1221 (9th Cir. 2008).

Plaintiff also brings claims under the Rehabilitation Act (RA).[3] "The ADA applies only to public entities, whereas the RA proscribes discrimination in all federally-funded programs." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). Title II of the ADA was modeled after Section 504 of the Rehabilitation Act of 1973, and there is no

---

[3] Rehabilitation Act of 1973, § 504, as amended, 29 U.S.C. § 794, *et seq*.

**INITIAL REVIEW ORDER - 4**

significant difference in the analysis of rights and obligations arising under the two Acts. *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 n. 11 (9th Cir. 1999).[4]

It appears unsettled in the Ninth Circuit whether private entities performing the services of a public entity are susceptible to suit under Title II of the ADA. Case law exists to support both sides of this argument. *See McNally v. Prison Health Services,* 46 F.Supp. 2d 49 (D. Me. 1999) (PHS, a private medical entity, provides a service to the jail and can be sued under Title II); *see Hamlin v. Prison Health Services, Inc.*, 2004 WL 2980749, at *10 (D. Me. 2004) (where a private entity asserted that Title III should apply, the court observed: "providing catering services in a National Park, the example often given of a private entity contracting with the Government and subject to suit only under Title III, seems . . . to be substantially different than contracting with the State to assume its constitutional burden of providing for an inmate's basic human needs"). *But see Edison v. Douberley*, 2008 WL 4194813 (M.D. Fla. 2008) (private entity not subject to Title II, collecting cases in agreement with that proposition). In the context of § 1983, the Ninth Circuit has held that a private physician and non-profit health care corporation's

---

[4] The RA provides that "[n]o otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." In order to state an RA claim, a plaintiff must allege that (1) he has a disability as defined by statute; (2) he is otherwise qualified for the program, activity, or benefit; (3) he was excluded from participation in the program or activity, denied the benefits of the public entity's services, or was otherwise discriminated against; and (4) his disability was the reason for the exclusion, denial, or discrimination. *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004).

**INITIAL REVIEW ORDER - 5**

provision of health care to a county detention facility can be construed as state action. *See Jensen v. Lane County*, 222 F.3d 570, 575-76 (9th Cir. 2000).

Liberally construed, the Complaint states an ADA and RA claim against IDOC, CCA, and ICC. The parties may brief at a later date whether in the Ninth Circuit, Title II applies to private entities providing health services in prisons.

D.  **Section 1983 Eighth Amendment Claim**

Plaintiff brings an Eighth Amendment claims under 42 U.S.C. § 1983, the civil rights statute. To state a claim under § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).

Plaintiff has alleged that without proper medical care for his eye injury, he has little chance of restoring the vision in his injured eye. To state a claim regarding prison medical care, Plaintiff must show that prison officials' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).

The Ninth Circuit has defined a "serious medical need" in the following ways:

> failure to treat a prisoner's condition [that] could result in further significant injury or the unnecessary and wanton infliction of pain[;] . . . [t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.

*McGuckin v. Smith,* 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other grounds*, *WMX Technologies, Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (quotation omitted).

Deliberate indifference exists when an official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference can be "manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976) (footnotes omitted).

In order to have liability under § 1983, a defendant must have personally participated in the act that violates the Constitution. *Fayle v. Stapley*, 607 F.2d 858, 862 (9th Cir. 1979). "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Accordingly, "[t]here is no respondeat superior liability under § 1983,"

**INITIAL REVIEW ORDER - 7**

meaning that a person cannot be sued in their personal capacity merely for being a supervisor. *Id.*

Because the warden of a prison is ultimately liable for an inmate's health care, the Court will permit Plaintiff to proceed against Phillip Valdez, inferring from the Complaint that Valdez knew of and failed to order proper medical care for Plaintiff's eye. However, if Plaintiff is unable to show that Valdez had personal participation in the denial of medical care, then Plaintiff may proceed against Valdez only on an injunctive relief claim. Plaintiff may wish to add as defendants by amendment the medical providers who allegedly refused to provide medical treatment to him.

In order to state a claim against ICC or CCA as entities, Plaintiff must meet the test articulated in *Monell v. Dep't of Social Services of City of New York*, 436 U.S. 658, 691-94 (1978).[5] Under *Monell*, the requisite elements of a § 1983 claim against a municipality or private entity performing a state function are the following: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy or custom; (3) the policy or custom amounted to deliberate indifference to plaintiff's constitutional right; and (4) the policy or custom was the moving force behind the constitutional violation. *See Mabe v. San Bernardino County, Dep't of Pub. Soc. Servs.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001). An unwritten policy or custom must be so "persistent and widespread" that it constitutes a "permanent and well settled" policy. *Monell*, 436 U.S. at

---

[5] *See also Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1216 (10th Cir. 2003) (cataloging circuit court cases applying *Monell* to private entities).

**INITIAL REVIEW ORDER - 8**

691. Because Plaintiff has not stated a policy-based claim against ICC or CCA, he may not proceed on his medical claim against them.

The state and state entities are not considered persons under § 1983 because the Eleventh Amendment prohibits a federal court from entertaining a suit brought by a citizen against a state. *Hans v. Louisiana*, 134 U.S. 1 (1890). The United States Supreme Court has consistently applied the Eleventh Amendment's jurisdictional bar to states and state entities "regardless of the nature of the relief sought." *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Therefore, Plaintiff cannot proceed against IDOC on a § 1983 claim.

### E. Exhaustion of Administrative Remedies

Plaintiff has submitted several inmate or offender concern forms, but he has submitted only one grievance and that grievance does not appear related to his claims. If Plaintiff did not fully exhaust each claim through the grievance procedures, including an appeal to the warden, on his ADA/RA and medical care claims, his case will be dismissed without prejudice and he will be required to pay the $350 filing fee by automatic deduction from his prison trust account. The Court will provide Plaintiff with an opportunity to determine whether he wishes to proceed.

The Court may not make exhaustion of administrative remedies a pleading requirement, but Plaintiff's complaint may be subject to dismissal by motion of the Defendants if he failed to exhaust his administrative remedies. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007) ("failure to exhaust remedies is an affirmative defense, and

**INITIAL REVIEW ORDER - 9**

inmates are not required to specially plead or demonstrate exhaustion in their complaints"); Title 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Booth v. Churner*, 532 U.S. 731 (2001) (if administrative remedies are not exhausted *prior* to the filing of a lawsuit, the lawsuit is subject to dismissal). The Supreme Court has particularly noted: "[W]e stress the point... that we will not read futility or other exceptions into [PLRA's] statutory exhaustion requirements." *Booth v. Churner*, 532 U.S. at 741, n. 6.

### F.  Conclusion

Plaintiff may proceed on his ADA and RA claims against IDOC, ICC, and CCA. He may proceed on his § 1983 Eighth Amendment claim against Philip Valdez. However, if Plaintiff did not fully exhaust his administrative remedies through the prison grievance system, his case may be dismissed upon motion of Defendants. His other option is to dismiss this case, attempt to exhaust claims related to any ongoing violations, and file a new suit.

Good cause appearing from his financial affidavit and prison trust account statement, Plaintiff may proceed in forma pauperis if he elects to proceed with his case.[6]

---

[6] In order for any litigant to file a civil complaint in federal court, that litigant must either pay the filing fee in full at the time of filing or seek in forma pauperis status, which allows the litigant to pay the filing fee over time. In either case, the litigant must pay the full filing fee for having filed the complaint, regardless of whether that person's case is eventually dismissed or is

**INITIAL REVIEW ORDER - 10**

The Court will then require the prison to deduct part of the $350 filing fee from Plaintiff's trust account whenever any money is deposited into his account, until the entire fee is paid. If Plaintiff dismisses his case voluntarily at this point, the Court will not require the deductions.

**ORDER**

NOW THEREFORE IT IS HEREBY ORDERED that Plaintiff's Motion to Proceed in Forma Pauperis (Docket No. 1) is MOOT, pending receipt of notification that Plaintiff wishes to proceed with his case, whereupon the motion will be granted.

IT IS FURTHER HEREBY ORDERED that Plaintiff's request for appointment of counsel (contained in the complaint) is DENIED without prejudice. The Court will review the request at a later date when additional factual information is before the Court.

IT IS FURTHER HEREBY ORDERED that Plaintiff shall file either a notice of dismissal or a notice of intent to proceed within the next thirty (30) days.

DATED: **February 9, 2010**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

---

unsuccessful. *See* 28 U.S.C. 1915(b)(1) ("if a prisoner brings a civil action or files an appeal *in forma pauperis*, the prisoner shall be required to pay the full amount of a filing fee").

**INITIAL REVIEW ORDER - 11**